UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

W.L. BINDER,

       Plaintiff,

v.                              CASE No. 8:11-CV-1874-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

### I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing and who has an eighth grade education, has worked as

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

a cleaner, hotel cleaner, factory-packer, and greens keeper (Tr. 26, 28, 182).[2] He filed a claim for Social Security disability benefits, alleging he became disabled due to bad feet (warts), hip and back pain from degenerative joint disease, and high blood pressure (Tr. 134). His claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease L5-S1 and L4-L5, narrowing of disc space at L5-S1; and moderate obesity (Tr. 12). The law judge further found that the plaintiff's alleged impairments of bad feet, right thumb pain, and hypertension were not "'severe' as they are not supported by objective signs, symptoms, or laboratory findings and no more than minimally affect his ability to perform work related activity" (Tr. 13). He concluded that the plaintiff has the residual functional capacity "to perform light work as defined in 20 C.F.R. 404.1567(b). The claimant can sit, stand or walk up to

---

[2] The plaintiff has also represented that he has a high school education. At the hearing, the plaintiff testified "I would tell a lie on my [job] application[s] so I could get a job" (Tr. 28). However, the record indicates that the plaintiff also "lied" on his disability application and to his medical care providers (Tr. 138, 218).

six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch and crawl" (id.). The law judge decided that these limitations prevented the plaintiff from returning to his past relevant work (Tr. 17). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as the light work positions of fast food worker, small parts assembler, and copy machine operator (Tr. 18). Even if the plaintiff required a sit/stand option, the vocational expert testified, and the law judge found, that the plaintiff could perform jobs such as assembler-packer, inspector packer, and marker (id.). The law judge therefore ruled that the plaintiff was not disabled (Tr. 18-19). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental

-3-

impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

-4-

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on four grounds.  None of those assertions warrants reversal.

A. The plaintiff first attacks the law judge's "obvious rejection" of the opinion of Dr. Ladapo Shyngle, a consultative physician (Doc. 16, pp. 10-12).  This contention does not demonstrate reversible error.

On February 15, 2007, Dr. Shyngle performed an Internal Medicine Examination of the plaintiff, which was appropriate in light of the plaintiff's condition of high blood pressure (Tr. 187-90). Dr. Shyngle found the plaintiff with normal gait and stance, and in no acute distress (Tr. 188). His neurological examination revealed no motor or sensory deficit (Tr. 189). Dr. Shyngle indicated that the plaintiff has reduced range of motion of the lumbar and left shoulder joint, but full range of motion in the elbows, forearms, wrists, hips, knees, and ankles bilaterally (id.). He also stated that the plaintiff has strength of 4/5 in the bilateral upper and lower extremities (id.). Finally, Dr. Shyngle opined that the plaintiff's prognosis is stable, but he "has marked limitation for standing, walking, bending, carrying, lifting, and reaching activities. The [plaintiff] can walk one block, stand for 15 minutes, but cannot do any lifting" (id.).

The plaintiff asserts that the law judge "failed to set forth any specific reasons of his own for rejecting [Dr. Shyngle's] opinion" (Doc. 16, p. 10). However, the law judge discussed Dr. Shyngle's opinion in his decision (Tr. 15). Further, the law judge indicated that Dr. J. Warren Axline, a testifying medical expert and orthopedic surgeon, found Dr. Shyngle's

-6-

opinion unpersuasive (id.). In this regard, the law judge stated, "Exhibit 3F [Dr. Shyngle's report] indicated that the claimant could walk one block; stand for 15 minutes; and not do any lifting, but no supportive documents were offered by Dr. Shyngle, an internist. Dr. Axline said, 'anyone who can lift nothing would have to be fed'" (id.). This reasoning is sufficient to discount Dr. Shyngle's opinion.

In the first place, as a one-time examining consultant, Dr. Shyngle's opinion is not entitled to the same weight as a treating physician. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004).

Moreover, the law judge noted that Dr. Shyngle is an internist so that back problems are not within his area of specialty, while Dr. Axline is an orthopedic surgeon whose specialty does include back problems. Furthermore, Dr. Shyngle did not diagnose a back impairment, but rather he diagnosed a "[h]istory of chronic low back pain secondary to back injury from lifting a heavy object" (Tr. 189). This indicates that he relied on the plaintiff's statement of his subjective complaints. Significantly, the law judge discounted the plaintiff's subjective complaints to the extent that they are

-7-

inconsistent with the residual functional capacity assessment (Tr. 14). The plaintiff has not challenged the law judge's credibility finding and thus, in light of the scheduling Order (Doc. 11, p. 2), any such challenge is abandoned.[3]

The law judge also pointed out that Dr. Shyngle offered no supporting documents. Further, Dr. Shyngle examined the plaintiff on February 15, 2007, near the beginning of the alleged period of disability and before any pertinent medical evidence had been generated. In contrast, Dr. Axline considered all the medical evidence in the record (Tr. 50, 58), and thus had the longitudinal perspective that the regulations indicate is significant. 20 C.F.R. 404.1527(c)(2). Moreover, Dr. Axline testified under oath and was subject to cross-examination by plaintiff's counsel. Thus, Dr. Axline's evidence was remarkably different than the opinions typically offered by reviewing non-examining State agency doctors. If a testifying medical expert were treated the same as a reviewing State agency doctor, it would significantly diminish the utility of calling a medical doctor as an expert witness to assist in the resolution of difficult cases.

---

[3]Under this circumstance, the plaintiff's discussion of the Waddell test is immaterial.

The plaintiff argues that Dr. Shyngle's assessment is supported by objective findings, such as limited squatting and inability to walk on his toes (Doc. 16, p. 12).  These findings do not support the extreme functional limitations opined by Dr. Shyngle.  Furthermore, the mostly benign findings of the plaintiff's musculoskeletal system clearly do not compel a finding that Dr. Shyngle's functional limitations are valid (Tr. 189).  See Adefemi v. Ashcroft, supra.

As indicated, one of the reasons the law judge gave for discounting Dr. Shyngle's opinion was the assertion that the plaintiff "cannot do any lifting" (Tr. 189).  In his reply brief, the plaintiff challenges the Commissioner's and Dr. Axline's "overly simplistic and literalistic interpretation" of Dr. Shyngle's statement that the plaintiff "cannot do any lifting" (Doc. 22, p. 2).  The plaintiff argues that it defies common sense to assume that Dr. Shyngle meant that the plaintiff "could not lift very light items or feed himself" (id.).  However, the law judge could reasonably conclude that Dr. Shyngle meant exactly what he said – the plaintiff cannot do any lifting.  Had Dr. Shyngle actually thought the plaintiff should "avoid any significant lifting activities" (id.), he would have said that.

Moreover, the plaintiff testified that "I don't lift nothing" (Tr. 42). This suggests that Dr. Shyngle based his functional limitation on the plaintiff's subjective complaints.   Regardless, both the plaintiff and Dr. Shyngle said that he could not lift anything, and the plaintiff is correct that such an assertion is contrary to common sense.   Consequently, that implausible assertion provides a sound basis for discounting Dr. Shyngle's opinion, as well as the plaintiff's testimony.

In short, the law judge indicated in his decision that he considered Dr. Shyngle's opinion. Moreover, as the plaintiff acknowledges, the law judge obviously rejected that opinion.   In addition, he set forth adequate reasons for doing so.

B. The plaintiff asserts that the law judge improperly accorded little weight to the opinion of his treating physician, Dr. Joseph Walsh (Doc. 16, pp. 12-17). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).   Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is

conclusory or inconsistent with the physician's own medical records. <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Walsh completed a "Medical Source Statement" on May 24, 2009 (Tr. 243-44). He opined that, in an eight-hour workday, the plaintiff can sit for two hours and stand/walk for two hours, but he needs to rest by lying down or reclining for three hours (Tr. 243). Dr. Walsh also concluded that the plaintiff can lift/carry five pounds frequently (Tr. 244). He reported that the plaintiff should avoid balancing and stooping (<u>id</u>.). Dr. Walsh noted that his opinion related to the period of "5/14/2008 to present" (<u>id</u>.). He indicated that his assessment was premised upon his diagnosis of "back pain" (<u>id</u>.). To the question: "The following tests and evaluations were performed," he answered, "None" (<u>id</u>.).

With respect to the opinion of Dr. Walsh, the law judge stated (Tr. 16):

> The undersigned has considered the questionnaire completed by Dr. Walsh on May 24, 2009, and this opinion that claimant could perform less than sedentary work since May 14, 2008, has been afforded little weight (Exhibit 8F). Dr. Walsh's assessment, which was submitted to the doctor by claimant's representative, is without explanation as

to why such exaggerated limitations.  In addition,
the assessment is not accompanied by an objective
evaluation or examination report or by objective
findings that would support them.  Dr. Walsh's
assessments seem to be based on claimant's
subjective complaints and not on objective
examinations.  The objective findings shown on
radiographic studies and on physical examinations
of record do not account for the extreme limitations
alleged by claimant and indicated on this
questionnaire. Dr. Walsh only treated the claimant
for low back pain on four occasions – July 4, 2007,
June 24, 2007, July 27, 2007 (follow-up on blood
work), and June 5, 2008.  Dr. Walsh consistently
reported that the claimant was in no acute distress
and no significant treatment was rendered.  Dr.
Walsh referred the claimant to an orthopedist on
this date, but there is no indication that the
claimant complied with this recommendation.

This explanation is reasonable and supported by the evidence.  Notably, the

law judge considered Dr. Walsh to be a treating physician.  This is somewhat

lenient since the plaintiff during the relevant period went to the clinic on just

four occasions and it is not clear that the plaintiff was seen by Dr. Walsh

those four times, as opposed to a physician's assistant.  Further, I noted that

on the earlier occasions there was a digital signature of Dr. Douglas Walsh,

not Joseph Walsh (see Tr. 228, 232).

In any event, the law judge considered Dr. Joseph Walsh a treating physician so that it is appropriate to apply the principles governing such doctors. As indicated, there is good cause for discounting a treating physician's opinion if it is conclusory. That clearly is the situation here. Consequently, that circumstance, alone, is sufficient basis to discount Dr. Walsh's answers on the form.

A review of the record reflects, as the law judge indicated, that Dr. Walsh's opinion is out of line with his treatment notes. For example, Dr. Walsh opined that the plaintiff needed to rest for three hours during an eight-hour workday. However, there is no mention of this limitation anywhere else in his records. Moreover, Dr. Walsh noted that he did not consider or perform any tests or evaluations in formulating his opinion (Tr. 244).

The plaintiff contends that Dr. Walsh's opinion is not extreme because it supports an ability to work part-time (Doc. 16, p. 15). However, an opinion that the plaintiff can only sit for a total of two hours in an eight-hour workday is fairly characterized as extreme (see Tr. 243). It is appropriate to add that it is questionable whether Dr. Walsh paid close attention when filling out the form since his total hours of sitting,

standing/walking and resting only add up to seven hours of an eight-hour workday (id.).

The plaintiff also argues that Dr. Walsh's opinion is supported by substantial evidence of record (which, in light of Adefemi v. Ashcroft, supra, would not be good enough). In this regard, the plaintiff points to examination results of "positive straight leg raising test, bilaterally, with pain at 50 degrees and ... abnormal deep tendon reflexes"; a lumbar spine x-ray dated April 20, 2007; and Dr. Walsh's referral to an orthopedist (Doc. 16, pp. 15-16). In order to prevail, however, the plaintiff must show that he had functional limitations from these conditions that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra. Here,

the plaintiff makes no effort to show how his impairments create a specific functional limitation beyond the law judge's finding of the plaintiff's residual functional capacity.

In further support of this contention, the plaintiff points to the report of Dr. Shyngle (Doc. 16, p. 16). However, as indicated, the law judge had a reasonable basis for discounting Dr. Shyngle's opinion. Therefore, the plaintiff's reliance on Dr. Shyngle's assessment is unpersuasive.

C. The plaintiff argues that "[t]he opinions of the non-examining medical consultants, upon whose opinions the ALJ accorded 'substantial weight' cannot, as a matter of law, constitute substantial evidence to rebut the contrary opinions of Dr. Walsh" (id., p. 17). However, the law judge did not indicate that he was relying upon the opinions of non-examining consultants in discounting Dr. Walsh's opinion (Tr. 16). Rather, Dr. Walsh's opinion was discounted due to its own lack of merit.

D. As a final issue, the plaintiff argues that the "Commissioner failed to sustain his burden of establishing that there is other work in the national economy that [the plaintiff] can perform" (Doc. 16, pp. 19-21). More

particularly, the plaintiff asserts that the law judge's hypothetical to the vocational expert failed to include all of his limitations.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161.

The plaintiff challenges the law judge's hypothetical question because it does not include the limitations set forth by Dr. Shyngle and Dr. Walsh. As indicated, the law judge reasonably discounted the opinions of these doctors. Therefore, those discounted limitations did not need to be included in the hypothetical question.

Moreover, the hypothetical question is not deficient as long as it corresponds to the residual functional capacity. Here, the residual functional capacity clearly matches the hypothetical question that the law judge posed to the vocational expert (compare Tr. 13 with Tr. 63-64).

Consequently, the hypothetical question is not flawed, and the Commissioner met his burden of establishing that there is other work in the national economy that the plaintiff can perform.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _11th_ day of September, 2012.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE